1  ROBERT S. SHWARTS (STATE BAR NO. 196803)
   rshwarts@orrick.com
2  MICHAEL D. WEIL (STATE BAR NO. 209056)
   mweil@orrick.com
3  CATHERINE Y. LUI (STATE BAR NO. 239648)
   clui@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
5  San Francisco, California  94105-2669
   Telephone: 415-773-5700
6  Fax 415-773-5759

7  Attorneys for Defendants Scopely, Inc., Massimo Maietti,
   and Ehud Barlach.
8

9

10

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14  ZYNGA, INC.,                          Case No. 16-cv-06855-VC

15              Plaintiff,                **OPPOSITION TO *EX PARTE*
                                          APPLICATION FOR AN ORDER
16       v.                               PERMITTING EXPEDITED
                                          DISCOVERY AND PREVENTING
17  SCOPELY, INC., a Delaware Corporation, DESTRUCTION OF EVIDENCE**
    MASSIMO MAIETTI, an individual, and
18  EHUD BARLACH, an individual,          Date:
                                          Time:
19              Defendants.               Courtroom:  4, 17th Floor
                                          Judge:      Hon. Vince Chhabria
20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2
**Page**

3    I.    INTRODUCTION ........................................................................................... 1

4    II.   ZYNGA CANNOT ESTABLISH "GOOD CAUSE" FOR EXPEDITED
           DISCOVERY .................................................................................................. 2

5
6          A.    Even Before This Litigation Began, Scopely Ensured That No Zynga
                 Information Would Be Disclosed To Or Used at Scopely. .................................... 3

7          B.    Zynga Cannot Show Its Requested Expedited Discovery Is Essential. .................. 4

8          C.    Zynga's Proposed Discovery Is Overbroad. ........................................................ 7

9          D.    Zynga's Requests Are Overly Burdensome. ........................................................ 9

           E.    Zynga's Requests for Inspection of Private Devices Is Not Justified. .................. 10

10         F.    Zynga's Request Circumvents Rules Governing the Timing of Trade Secret
                 Discovery. ......................................................................................................... 12

11   III.  CONCLUSION ............................................................................................... 14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO *EX PARTE*
APPLICATION FOR EXPEDITED DISCOVERY
CASE NO. 16-CV-06855-VC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American LegalNet, Inc. v. Davis*,
   673 F. Supp. 2d 1063 (C.D. Cal. 2009)...............................................................2, 5, 7

*Brocade Communs. Sys. v. A10 Networks, Inc.*,
   No.10-CV-03428-LHK, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012) ........................12

*Computer Economics, Inc. v. Gartner Group Inc.*,
   50 F. Supp. 2d 980 (1999).........................................................................................13

*Excelligence Learning Corp. v. Oriental Trading Co.*,
   No. 5:03-CV-4947 JF (RS), 2004 WL 2452834 (N.D. Cal. June 14, 2004).............13

*Fuhu, Inc. v. Toys "R" US, Inc.*,
   2012 WL 12870313 (S.D. Cal. Oct. 4, 2012) ............................................................8

*Han v. Futurewei Techs., Inc.*,
   No. 11–CV–831–JM (JMA), 2011 WL 4344301 (S.D. Cal. Sept. 15, 2011).........12

*Henry Schein, Inc. v. Cook*,
   No. 16-cv-03166-JST, 2016 WL 3212457 (N.D. Cal. Jun. 10, 2016)  ...............7, 11

*Hooser v. Superior Court*,
   84 Cal.App.4th 997 (2000)........................................................................................11

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
   No. 15-CV-01267-SC, 2015 WL 4149066 (N.D. Cal. July 9, 2015).......................13

*Loop AI Labs Inc. v. Gatti*,
   2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) .........................................................12

*Matson & Ison Tech. Consulting v. Dell Inc.*,
   No. CIV S-08-0683 MCE EFB, 2008 WL 3863447 (E.D. Cal., Aug. 19, 2008) ....10

*Quia Corp. v. Mattel, Inc.*,
   No. C10–01902 JF (HRL), 2010 WL 2179149 (N.D. Cal. May 27, 2010) ...............3

*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*,
   213 F.R.D. 418 (D. Colo. 2003)..................................................................................9

*Riley v. California*,
   134 S. Ct. 2473 (2014) ..............................................................................................11

*Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.*,
   907 F. Supp. 2d 1086 (N.D. Cal. 2012) ............................................................ *passim*

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002) ................................................................................2

*Soc. Apps, LLC v. Zynga, Inc.*,
  No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) .......................12, 13

*United States v. Heckenkamp*,
  482 F.3d 1142 (9th Cir. 2007) .................................................................................11

*Vasudevan Software, Inc. v. MicroStrategy Inc.*,
  No. 11–cv–06637–RS–PSG, 2013 WL 1366041, (N.D. Cal. Apr. 3, 2013) ...........................12

**Statutes**

Cal. Code of Civ. Pro. § 2019.210 ..............................................................................12, 13

Fed.R.Civ.P. 16(b) ..................................................................................................9

Fed.R.Civ.P. 26(d) ..............................................................................................10, 12

Fed.R.Civ.P. 26(f) ................................................................................................2, 6

1

## I.     INTRODUCTION

Defendants oppose Plaintiff's application for expedited discovery.  Expedited discovery is warranted only in exceptional circumstances where the moving party can demonstrate good cause.  In this district, good cause requires, among other things, that plaintiff Zynga, Inc. ("Zynga") show that the discovery it seeks is "essential" to the injunctive relief it seeks.  Zynga cannot do so.

Zynga claims it needs expedited discovery to demonstrate that the defendants (a) have actually used Zynga's confidential information and (b) have actually followed through with their alleged plans to solicit Zynga employees.  Zynga, however, cannot show good cause for its expedited discovery because:

- As to Scopely and Barlach, Zynga has offered no evidence that either defendant is in possession of Zynga information.  Moreover, Scopely undertook substantial, voluntary preventative measures when it first hired Maietti and Barlach—well before any actual or threatened litigation—to ensure that no Zynga confidential information would be disclosed to or used at Scopely.  Scopely undertook further efforts to have a third-party forensic company collect, preserve, and quarantine potentially relevant devices and account upon initiation of this lawsuit.  There is no need for expedited discovery—or injunctive relief—where there is no risk of use or disclosure at this point and where Zynga offered no evidence that Scopely or Barlach were ever in possession of Zynga information.

- The discovery Zynga seeks is not essential or even connected to the relief it seeks.  Zynga contends that it already has "clear" evidence that defendant Maietti unlawfully copied Zynga's confidential information before leaving Zynga.  Zynga's desire for additional discovery into, for example, whether defendants actually used this confidential information is not essential to its request for a narrow "do not use or disclose" confidential information injunction that seeks to prohibit bar future use or disclosure of that information.  Likewise, requiring Scopely to produce all communications with any former

Zynga employee is not connected to Zynga's requested injunction that Scopely refrain from requesting that Maietti or Barlach from soliciting employees.

- Zynga's request for expedited discovery is overly burdensome and fundamentally inconsistent with the delay it has exhibited to this point. Zynga has known the facts that purport to justify a preliminary injunction for many weeks and has had any such facts in its possession for over four months. Any urgency it senses at this point is of its own making. Nor is Zynga's requests for direct access to the individual defendants' personal/private devices essential to its motion for preliminary injunction. These requests only seek to invade the Defendants' privacy and confidential information—including Scopely's own trade secrets and confidential information.

- Zynga has failed to identify the "trade secrets" at issue with reasonable particularity. In trade secrets cases, federal courts in this district have adopted California rules that require a plaintiff to adequately identify its trade secrets before conducting discovery. Zynga has failed to do so here even though Zynga *itself* has argued in prior litigation that a trade secrets plaintiff must describe its trade secrets with reasonable particularity before discovery can commence.

The Court should deny Zynga's motion.

## II.  ZYNGA CANNOT ESTABLISH "GOOD CAUSE" FOR EXPEDITED DISCOVERY.

Zynga must show good cause to justify expedited discovery before the Rule 26(f) conference. *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002). Under this "good cause" standard, Zynga must establish that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* Importantly, "expedited discovery is not automatically granted merely because a party seeks [preliminary relief]." *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). "Rather, in deciding whether to grant a request for expedited discovery in connection with a preliminary injunction hearing, a court examines the reasonableness of the request in light of all

1  the surrounding circumstances." *Quia Corp. v. Mattel, Inc.*, No. C10–01902 JF (HRL), 2010 WL

2  2179149, at *1 (N.D. Cal. May 27, 2010).

3       Courts may consider the following factors when determining whether good cause exists:

4  "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the

5  purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with

6  the requests; and (5) how far in advance of the typical discovery process the request was made."

7  *Rovio Entertainment Ltd. v. Royal Plush Toys, Inc.,* 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012)

8  ("*Rovio*").  Importantly, in this district, courts have held that the moving party must demonstrate

9  the discovery sought is *"essential"* to the request for preliminary injunction.  *See id.*  (plaintiff

10  "has not articulated any specific missing evidence *essential* for injunctive relief.") (emphasis

11  added).

12       While Zynga has filed a motion for temporary restraining order and preliminary injunction

13  (the "TRO"), none of the other factors listed above justify Zynga's request.

### A.  Even Before This Litigation Began, Scopely Ensured That No Zynga Information Would Be Disclosed To Or Used at Scopely.

16       There is no good cause for seeking expedited discovery because there are *no* allegations

17  that Scopely or Barlach are in possession of Zynga information and Scopely's precautionary

18  efforts to insulate itself from any such information began well before this lawsuit arose.  Upon

19  employment at Scopely, Maietti, Barlach, Hou, and Heck each signed a New Hire Letter and

20  Proprietary Information and Inventions Agreement ("PIIA") prohibiting them from bringing to

21  Scopely any proprietary information of their former employers.  Neal Declaration ISO Opposition

22  to Application for Temporary Restraining Order and Preliminary Injunction ("Neal Decl."), Exs.

23  A-D and F-I (New Hire Agreements) ("You are instructed to return all proprietary information

24  belonging to your prior employer) and (PIIA) ("I represent that I will not bring with me to the

25  Company or use in the performance of my duties for the Company any documents, materials, or

26  information of a former employer or third party").  Each also attended a presentation regarding

27  his ongoing obligations to Zynga, or alternatively, is specifically walked through his IP

28  obligations by senior management.  *Id.*  ¶ 10 and Ex. E.  Months before any litigation or even

1  threatened litigation, Scopely then went further to retain a third party forensic expert, Setec

2  Investigations ("Setec"), to search through certain of Maietti's and/or Barlach's personal devices

3  and accounts and remove any Zynga material that may have resided there.  Declaration of

4  Michael Kunkel ISO Opposition to Application for Temporary Restraining Order and Preliminary

5  Injunction ("Kunkel Decl."). ¶¶ 6-7.  Scopely undertook considerable, time-intensive and costly

6  measures to proactively safeguard against Zynga's confidential information.

7        This intent to identify, remove, and insulate Scopely from such materials comports with

8  Zynga's lack of evidence that Scopely or Barlach ever actually misappropriated Zynga

9  information.  There is no reason for Zynga to now seek discovery on an expedited basis in pursuit

10  of an injunction against using or disclosing Zynga's confidential information when Scopely has

11  continually undertaken extensive, voluntary efforts to avoid such use or disclosure.

12        **B.        Zynga Cannot Show Its Requested Expedited Discovery Is Essential.**

13        Zynga seeks a preliminary injunction enjoining: (1) defendant Scopely and Maietti from

14  using or disclosing any Zynga confidential information allegedly in their possession *i.e.,* a "do not

15  use or disclose" injunction; (2) defendant Maietti and Barlach from soliciting, encouraging, or

16  inducing any Zynga employee from terminating their employment; (3) defendant Scopely from

17  encouraging, causing or permitting former Zynga employees from soliciting Zynga employees;

18  and (4) defendants from destroying relevant evidence.  Zynga then claims it needs expedited

19  discovery to demonstrate (a) that the defendants have actually used Zynga's confidential

20  information, (b) the defendants have actually followed through with the alleged plans to solicit

21  Zynga employees, and (c) that a preservation order is necessary.  Zynga's Ex Parte Application

22  for an Order Permitting Expedited Discovery and Preventing Destruction of Evidence at 1

23  ("Zynga Motion").

24        None of these stated purposes justifies the discovery Zynga seeks, in large part because

25  Zynga claims that it already has the evidence it needs for the injunction it seeks.  Indeed, courts in

26  this district have denied expedited discovery in precisely this context.  For example, Judge

27  Armstrong recently denied a request for expedited discovery where the plaintiff sought expedited

28  discovery partly in order to "gain a full picture of Defendants' infringing activities and ensure that

these activities will be contained." *See Rovio,* 907 F. Supp. 2d at 1099.  The court rejected this argument because the plaintiff already supposedly possessed the information it needed:

> Plaintiff has [already] ascertained the identities of the entities and the individual allegedly responsible for the conduct it seeks to enjoin and *has not articulated any specific missing evidence essential for injunctive relief.*  Plaintiff, for example, has made no showing that a reasonable basis exists to conclude that there are other individuals or entities involved in the counterfeiting scheme… [and] *has not "precisely defined and carefully limited" the discovery requested to include only what is "essential for the preliminary injunction."*

*Id.* at 1100 (emphasis added).

Similarly, in *American LegalNet, Inc. v. Davis*, the court denied expedited discovery where the plaintiff failed to limit its requests to "information to preserve the status quo" and likewise failed to demonstrate a nexus between the discovery requests and specific allegations of wrongdoing.  673 F. Supp. 2d at 1068-69.  The court further reasoned that the request for expedited discovery was improper where the plaintiffs based several requests—including one seeking examination of hard drives beyond the specific one implicated— "solely on speculation." *Id.*

Here, Zynga says that it already has "clear" forensic evidence showing that defendant Maietti copied Zynga files and possesses them.  *Id.* at 3.  (referencing Zynga's own forensic analysis).  Yet, Zynga claims it requires additional discovery in order to determine "what Maietti did with Zynga's trade secrets while working at Scopely."  Zynga Motion. at 3.  Essentially, Zynga seeks evidence about whether defendants actually used the trade secrets.  But this information is not essential to the relief Zynga seeks *i.e.,* a "do not use or disclose" injunction.  As in *Rovio*, if Zynga supposedly already has evidence that Maietti is in unlawful possession of Zynga's information, it does not need additional evidence of how he may, or may not, have used the information.  While that may be relevant to a damages analysis at later stages of the case, it is irrelevant at this point.  *See Rovio*, 907 F. Supp. 2d at 1100 (denying expedited discovery where plaintiff "has not articulated any specific missing evidence essential for injunctive relief.")

Indeed, Zynga tacitly admits that the reason it wants expedited discovery is not necessarily to support its motions, but instead so it "can begin to address the harm caused by

1    Defendants' conduct on a timely basis." Zynga's Motion at 4:1-2.  Damages and *actual* harm—

2    as opposed to a threat of irreparable harm—have no relevance to Zynga's request for an

3    injunction that enjoins *future* use and disclosure.

4            Likewise, in support of its motion to enjoin solicitation, Zynga alleges that it already has

5    evidence of "a deliberate plan to violate the non-solicitation obligations of former Zynga

6    employees hired by Scopely." *Id.* at 4:10-11.  Though Zynga's request for expedited recovery

7    seeks information about such a plan, its request for *all* communications between *Scopely* and *any*

8    current or future Zynga employee—regardless of whether that Zynga employee contacted

9    Scopely first for a job—is not "essential" to an injunction narrowly focused on Maietti and

10   Barlach.  *See* Zynga Motion, Ex. 1 (Scopely Interrogatory Nos. 7-8).  Likewise, all

11   communications between Scopely, on the one hand, and Maietti, Barlach, Heck and Hou, on the

12   other hand, regarding their employment at Scopely has no connection to and certainly not

13   "essential" to the relief Zynga seeks.

14           Zynga also says it wants expedited discovery in order to "identify evidence relevant to

15   Zynga's TRO application" and "ensure that any relief granted … can have its full and intended

16   effect."  Zynga Motion at 1.  Again, the Court in *Rovio* rejected this same reasoning, where

17   plaintiffs sought to "gain a full picture of Defendants' infringing activities and ensure that these

18   activities will be contained."  *Rovio,* 907 F. Supp. 2d at 1099.  It is particularly inappropriate here,

19   where the only alleged evidence of actual wrongdoing relates to Maietti's copying of Zynga

20   material.  Nowhere in Zynga's Complaint or TRO application is there evidence against Scopely

21   or Barlach that constitutes anything more than speculation.  Zynga attempts to impute Maietti's

22   copying to Scopely, but offers no evidence in support of its allegation other than the idea that

23   Maietti could have copied the files at issue in order to take them to Scopely.  Zynga's Motion at

24   3:5-6.  Zynga also alleges a "deliberate plan to violate the non-solicitation obligations of former

25   Zynga employees" while offering only evidence of a text message in which Barlach offered to

26   discuss Zynga employees.  *Id.* at 4:12-18.  These evidentiary offerings amount only to

27   speculation, which is not grounds for expedited discovery against either Scopely or Barlach.

28

1   *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d at 1068-69 (denying expedited discovery

2   where alleged need was based "solely on speculation.").

3          Zynga has also failed to offer evidence that either expedited discovery or an evidence

4   preservation order are necessary on the basis that Scopely or the individual defendants may

5   destroy evidence prior to the Rule 26(f) scheduling conference. *See* Mtn. at 1, 5-6. This assertion

6   lacks foundation in reality. As in *Rovio*, "Plaintiff [has not] shown that expedited discovery is

7   warranted on the basis that it 'may' lose the opportunity for meaningful discovery due to

8   Defendants' 'deceptive practices' … [and] Plaintiff has not established that Defendants are

9   predisposed to destroy or hide evidence. *Rovio*, 907 F. Supp. 2d at 1100. Mere speculation does

10  not warrant expedited discovery where Defendants are already obligated to avoid altering,

11  damaging or destroying evidence related to this litigation. *Henry Schein,* 2016 WL 3212457 at *4

12  (noting a pre-existing obligation under the Federal Rules of Civil Procedure to preserve evidence

13  and the availability of sanctions or other appropriate remedies should defendants fail to do so).

14         Because Zynga cannot demonstrate its requested expedited discovery is essential to the

15  relief it requests, the Court should deny Zynga's application.

16         **C.      Zynga's Proposed Discovery Is Overbroad.**

17         Even if expedited discovery might be appropriate, the requests Zynga seeks to propound

18  are overbroad and not tailored or "essential" to the relief it seeks. Zynga has issued six sets of

19  discovery requests—three sets of interrogatories and three sets of document requests—that

20  broadly cover almost all of the facts ultimately at issue in this case and go even beyond that to

21  fish for wrongdoing that is without any basis in Zynga's complaint or motion. In addition to each

22  request being overly broad itself, the requests have a built-in redundancy, with interrogatories and

23  requests for production seeking identical information.

24         As noted, Zynga's requests seek information about "all communications" between

25  Scopely and not only the individual defendants, but all other current or former Zynga employees

26  whose conduct Zynga has no real basis for calling into question. *See, e.g.,* Zynga Motion, Exs. 1

27  (Scopely Interrogatory Nos. 5-8); 2 (Scopely Request for Production Nos. 5-9); 3 (Maietti

28  Interrogatory Nos. 5-7); 4 (Maietti Request for Production No. 9-11); 5 (Barlach Interrogatory

1  Nos. 5-7); and 6 (Barlach Request for Production No. 7-9).[1]  These requests are far-reaching and

2  cover every possible scenario of breach of the individual defendants' non-solicitation agreements.

3  Zynga has failed to even attempt to limit discovery into this body of facts in a way that addresses

4  only matters relevant to injunctive relief and proposes discovery requests that "instead goes to the

5  merits of plaintiff's claims in this action."  *Fuhu, Inc. v. Toys "R" US, Inc.*, 2012 WL 12870313, at

6  *2 (S.D. Cal. Oct. 4, 2012) (holding that expedited discovery must be denied where it is not

7  "narrowly tailored to obtain information relevant to a preliminary injunction determination and

8  instead goes to the merits of plaintiff's claims in this action.").

9      Zynga also seeks the information about "each instance" when the individual defendants

10  connected external devices fitting general descriptions to any Scopely computer and each use or

11  disclosure of Zynga information.  *See* Zynga Motion, Exs. 1 (Scopely Interrogatory Nos. 2-4); 2

12  (Scopely Request for Production Nos. 2-4); 3 (Maietti Interrogatory Nos. 3-4); 4 (Maietti Request

13  for Production Nos. 7-8); 5 (Barlach Interrogatory Nos. 3-4); and 6 (Barlach Request for

14  Production Nos. 5-6).[2]  These requests are not tailored to information necessary for a "do not use

15  _____

16  [1] Scopely Interrogatory Nos. 6-8 and Scopely Request for Production Nos. 5-9 collectively seek identification and production of "all communications" between Scopely and the individual defendants, Dereck Heck, Evan Hou, any other current or former employee of Zynga,

17  any Scopely employees, or any third party recruiter regarding their or other Zynga employees' potential employment with Scopely or identification for potential employment at Scopely.  These

18  requests seek almost all of the information that could possibly be relevant to Zynga's claims in relation to the individual defendants' non-compete agreements.  Moreover, these cover not only

19  facts at issue involving the individual defendants but seek discovery based on mere speculation about the *possibility* of wrongdoing in relation to any other Zynga employee.  This goes beyond

20  that at issue in Zynga's request for injunctive relief and simply seeks early discovery on the merits.

21  Maietti Interrogatory Nos. 6-8, Maietti Request for Production Nos. 9-11, Barlach

22  Interrogatory Nos. 5-7, and Barlach Request for Production Nos. 7-9 collectively seek identification and production of "all communications" between Maietti/Barlach and Scopely or Maietti/Barlach and any other current or former Zynga employee regarding Maietti's/Barlach's

23  employment at Scopely or the potential employment at Scopely of any other Zynga employee.

24  These, too, go beyond the matters at issue at this stage and seek broad discovery on issues irrelevant to the injunctive relief Zynga seeks.

25  [2] Scopely Interrogatory Nos. 2-4 collectively seek identification of each time Maietti or

26  Barlach connected external USB devices fitting the general description of capacity and manufacturer to a Scopely computer or network.  These requests are not limited to the transfer of

27  particular information, could apply to a range of similar USB devices, and are not tailored to a pursuit of injunctive relief where Zynga already alleges evidence of possession.

28  Scopely Interrogatory Nos. 5-6 and Scopely Request for Production Nos. 2-4 collectively seek information about each use or disclosure Scopely made of any Zynga information it may

1   or disclose" injunction where Zynga supposedly already has evidence that Maietti is in possession

2   of Zynga's information.  While that may be relevant to a damages analysis at later stages of the

3   case, it is irrelevant at this point how he may, or may not, have used the information.  *See Rovio*,

4   907 F. Supp. 2d at 1100 (denying expedited discovery where plaintiff "has not articulated any

5   specific missing evidence essential for injunctive relief.").

6           Moreover, Zynga does *not* seek an injunction to prevent Barlach from using or disclosing

7   Zynga information.  Accordingly, requests to Barlach on this topic are wholly irrelevant to

8   Zynga's request for injunctive relief.  *See Rovio*, 907 F.Supp. 2d at 1100 (denying expedited

9   discovery where plaintiff "has not articulated any specific missing evidence essential for

10  injunctive relief.").  Such "broad discovery . . . should be pursued more properly within the

11  structure and supervision afforded by a court-approved scheduling order under Fed.R.Civ.P.

12  16(b)."  *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc*., 213 F.R.D. 418, 421 (D. Colo.

13  2003).

14          **D.      Zynga's Requests Are Overly Burdensome.**

15          Not only is there no basis for granting expedited discovery, to do so would impose

16  significant cost, burden and irreparable harm upon Scopely and the individual defendants.  Here,

17  Zynga's compressed, seven day schedule for proposed document production is unjustified.  In

18  essence, Zynga seeks discovery on all of the facts ultimately at issue in this case and a range of

19  new potential scenarios under which Scopely or the individual defendants *may* have committed

20  wrongdoing.  Responding to these requests would include painstaking forensics analyses—that

21  Zynga itself took over a month to conduct—into, for example, every time when the individual

22  defendants used certain media devices on any Scopely or personal computers, and all records of

---

23  have obtained.  This information is irrelevant to a "do not use or disclose" injunction.  If Zynga

24  seeks information about the extent of any potential use or disclosure of information allegedly in
    the individual defendants' possession, that information becomes relevant only at later stages of

25  the case relating to damages.  There is no urgency to this discovery.

26          Maietti Interrogatory Nos. 3-4 and Maietti Request for Production Nos. 7-8, Barlach
    Interrogatory Nos. 3-4, and Barlach Request for Production Nos. 5-6 collectively seek all

27  documents and communications that include, use, or disclose non-public Zynga information.  As
    with discovery into Scopely's alleged use or disclosure of Zynga information, discovery into

28  Maietti's or Barlach's alleged use or disclosure would be premature.  This information can be
    pursued at a later date with no effect on Zynga's application for temporary relief.

1   the individual defendants' communications with anyone at Scopely both before and after their

2   employment.  Even in normal circumstances, such an expansive review would be untenable on

3   short order and likely would take months to complete considering the breadth of Zynga's

4   requests.  But Zynga seeks this review within seven days in the midst of holiday season.  Granting

5   such a schedule would impose enormous burdens.

6       The burden is particularly undue given Zynga's own delay in filing this case.  *See, e.g.*

7   *Matson & Ison Tech. Consulting v. Dell Inc*., No. CIV S-08-0683 MCE EFB, 2008 WL 3863447

8   (E.D. Cal., Aug. 19, 2008) (denying expedited discovery because the evidence sought was

9   unnecessary and because of the plaintiff's delay in prosecuting the action).  When Maietti

10  departed Zynga in July, 2016, Zynga knew Maietti was going to Scopely, and, in fact, terminated

11  him immediately because of his future employer.  Dkt. No. 4-14 (Hawley Decl.) ¶ 8.  However,

12  Zynga did not conduct any forensic exam until late October.  Dkt. No. 4 (Maugeri Decl.) ¶¶ 9, 12.

13  After conducting that exam and discovering the purported evidence motivating Plaintiff's TRO,

14  Zynga *still* delayed over a month before filing its motion.  Zynga now seeks burdensome

15  discovery on an expedited schedule when Zynga itself chose to develop its case at an unhurried

16  pace.  Any sudden urgency to this matter is of Zynga's own making, and in any case likely

17  contrived in order to circumvent traditional discovery rules.  The Court should deny Zynga's

18  request and require Zynga to comply with Rule 26(d).

19      **E.    Zynga's Requests for Inspection of Private Devices Is Not Justified.**

20      Zynga's demands for inspection of Defendants' personal devices are likewise

21  overreaching and invades privacy rights and attorney-client privileges.  Specifically, Zynga

22  demands identification of and access to Maietti's and Barlach's personal devices or a "clone" of

23  all electronics to which Maietti or Barlach attached these devices.  *Id.* Exs. 3 (Maietti

24  Interrogatory No. 1); 4 (Maietti Request for Production Nos. 2-6); 5 (Barlach Interrogatory

25  No. 1); and 6 (Barlach Request for Production Nos. 2-4).[3]

26  ───────────────
            [3] Maietti Interrogatory No. 1 and Barlach Interrogatory No. 1 seek identification of all
27  devices to which Maietti/Barlach has ever downloaded or copied Zynga information.  Maietti
    Request for Production Nos. 2-6 collectively seek inspections *and* "clones" of Maietti's external
28  USB device, personal devices, Box sync account, Dropbox account, and all personal devices
    Maietti attached to either his Box or Dropbox account.  Barlach Request for Production Nos. 2-4

1         What Zynga is asking for is unprecedented.  It is essentially asking for unfettered access

2    to the individuals' *personal* email, cell phones, and other devices and accounts, which would give

3    access to communications with attorneys, financial records, medical history, political affiliations,

4    personal communications with family and friends, and numerous other private materials.  *Riley v.*

5    *California*, 134 S. Ct. 2473, 2489 (2014) ("[A] cell phone collects in one place many distinct

6    types of information—an address, a note, a prescription, a bank statement, a video—that reveal

7    much more in combination than any isolated record."); *United States v. Heckenkamp*, 482 F.3d

8    1142, 1146-1147 (9th Cir. 2007) (recognizing reasonable expectation of privacy in one's personal

9    computer and finding that "the mere act of accessing a network does not in itself extinguish

10   privacy expectations"); *Hooser v. Superior Court*, 84 Cal.App.4th 997, 1003-04 (2000) (listing

11   several categories of information protected by the right to privacy, including a person's financial

12   affairs, political affiliations, medical history, sexual relationships, and confidential personnel

13   information).  Broad inspection could potentially also give Zynga access to Scopely's own trade

14   secrets residing on the individual defendant's personal devices, Box or Dropbox accounts.

15   Zynga's discovery requests therefore put both Scopely and the individual defendant's own

16   confidential information at risk.  Particularly on an expedited schedule where the parties will not

17   have sufficient time to negotiate an appropriate protective order, this intrusion is unwarranted.

18        Not only is such access not reasonable, but it also completely unnecessary to accomplish

19   the intended purpose.  "[T]he more sensitive the nature of the personal information that is sought

20   to be discovered, the more substantial the showing of the need for the discovery that will be

21   required before disclosure will be permitted." *Hooser*, 84 Cal. App. 4th at 1004-05.  In fact, in an

22   analogous case from earlier this year, Judge Tigar denied a similar request for inspection of

23   personal devices, calling it an "intrusive excursion into [defendant's] private data, much of which

24   is likely unrelated to this case." *Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2016 WL

25

26   collectively seek inspections as well as "clones" of Barlach's USB drive, Dropbox account, and
     any personal devices he attached to his Dropbox account.  These are far-reaching requests that

27   seek comprehensive information about the individual defendants' alleged possession of Zynga
     information, including materials that would predominately sweep in private information that is

28   wholly irrelevant to this dispute at any stage.

1   3212457, at *5 (N.D. Cal. Jun. 10, 2016)  (denying plaintiff's request for a "clone" or "mirror

2   image" of data in defendant's personal e-mail accounts, iPad, iPhone, computers, other mobile

3   devices, and other computer storage drives").

4          Here, Zynga cannot justify broad inspections from personal devices that would necessarily

5   allow discovery of both privileged and private information that is irrelevant to Zynga's

6   application for preliminary relief.  Zynga does not need the individual defendants' personal

7   devices.  If the Court were inclined to grant Zynga some discovery (there is no grounds to do so),

8   then a simple request for production would be sufficient, not an inspection of the individual's

9   personal devices and accounts.  *Han v. Futurewei Techs., Inc*., No. 11–CV–831–JM (JMA), 2011

10  WL 4344301, at *5 (S.D. Cal. Sept. 15, 2011) (denying request for computer inspection because

11  "there is a more convenient, less burdensome, and less expensive way for Huawei to obtain what

12  it wants — to serve discovery requests, including interrogatories and document requests, asking

13  for this information."); *Vasudevan Software, Inc. v. MicroStrategy Inc.,* No. 11–cv–06637–RS–

14  PSG, 2013 WL 1366041, at *1 (N.D. Cal. Apr. 3, 2013) (same).[4]

15        **F.     Zynga's Request Circumvents Rules Governing the Timing of Trade Secret
               Discovery.**
16

17         Not only does Zynga's request seek to circumvent Rule 26(d), it ignores the requirement

18  federal courts in this jurisdiction have repeatedly applied to trade secrets cases: before

19  commencing discovery, a trade secrets plaintiff must first describe its trade secrets with

20  reasonable particularity.  *See Loop AI Labs Inc. v. Gatti,* 2015 WL 9269758, at *3 (N.D. Cal.

21  Dec. 21, 2015).  In other litigation, Zynga itself has insisted on this same requirement.  *Soc. Apps,*

22  *LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *1 (N.D. Cal. June 14,

23  2012).  Zynga not only ignores this rule now but fails to even define the "confidential,

24  _____

25        [4] Where courts permit similar inspections, they do so only through a protocol that allows
     the defendants to *first* screen out any private/privileged information.  Courts do not provide direct
26   access to the defendants' personal/private devices.  *See Brocade Communs. Sys. v. A10 Networks,*
     *Inc.*, No.10-CV-03428-LHK, 2012 WL 70428, at *3 (N.D. Cal. Jan. 9, 2012) ("Brocade has
27   proposed an inspection, search, and production protocol that takes many steps to protect A10's
     confidential and attorney client privileged information, for example, by requiring that the forensic
28   expert produce any recovered files to A10 first, to allow A10's counsel to review the files as to
     relevance, responsiveness, and privilege prior to any disclosure to Brocade.")

1   "proprietary" or "non-public" Zynga information its discovery requests address.  Zynga Motion,

2   Exs. 1 (Scopely Interrogatory Nos. 1 and 5) and 3 (Maietti Interrogatory Nos. 1-3).

3   While Zynga may argue that the foregoing requirement is set forth in California Code of

4   Civil Procedure section 2019.210, and the Defend Trade Secrets Act does not contain a similar

5   provision, there is good reason for this Court to adopt a similar procedural rule.  *See Excelligence*

6   *Learning Corp. v. Oriental Trading Co.*, No. 5:03-CV-4947 JF (RS), 2004 WL 2452834, at *3,

7   n.3 (N.D. Cal. June 14, 2004) ("As the Court noted at oral argument, the state's Code of Civil

8   Procedure is not binding in this case.  Nevertheless, since there is no parallel trade secret

9   discovery provision set forth in the Federal Rules of Civil Procedure, the Court utilizes the state's

10  discovery requirements.") (emphasis added).  Indeed, the same common-sense reasons for

11  applying Section 2019.210 in prior cases applies equally here:

12      1.      It promotes well-investigated claims and prevents parties from filing meritless

13  trade secret complaints;

14      2.      It prevents plaintiffs from using discovery to obtain a defendant's trade secrets;

15      3.      It helps the court frame the scope of discovery; and

16      4.      It helps defendants form complete and well-reasoned defenses

17  *See Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *4

18  (N.D. Cal. July 9, 2015) (*citing Advanced Modular Sputtering, Inc. v. Super. Ct.*, 132 Cal. App.

19  4th 826, 835 (2005); *Computer Economics, Inc. v. Gartner Group Inc.*, 50 F. Supp. 2d 980, 985

20  (1999)); *accord Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at

21  *2 (N.D. Cal. June 14, 2012).

22      Before allowing Zynga to conduct any discovery, the Court should first require Zynga to

23  describe its trade secrets with reasonable particularity.  It has not even tried to do so here.

24  ///

25  ///

26  ///

27  ///

28  ///

1    **III.**    <u>**CONCLUSION**</u>

2            The Court should deny Zynga's motion for expedited discovery.

3

4    Dated: December 5, 2016

5                                                    ROBERT S. SHWARTS
                                                     MICHAEL D. WEIL
                                                     CATHERINE Y. LUI
6                                                    Orrick, Herrington & Sutcliffe LLP

7

8                                            By: _____ /s/ *Catherine Y. Lui* _____
                                                          CATHERINE Y. LUI
9                                                       Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28